UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MANTI'S TRANSPORTATION, INC. and
ALFRED J. MANTI,

                Plaintiffs,                      CV-06-1699 (SJF)(RML)

      -against-

                                           **OPINION & ORDER**

CITICAPITAL COMMERCIAL CORPORATION, INC.
f/k/a ASSOCIATES COMMERCIAL CORPORATION,

                Defendant.

------------------------------------------------------------X

FEUERSTEIN, J.

On April 12, 2006, plaintiffs Manti's Transportation, Inc. (MTI) and Alfred J. Manti (Manti) (collectively, plaintiffs) commenced this action against, *inter alia*, Citicapital Commercial Corporation, f/k/a Associates Commercial Corporation (Citicapital or defendant), asserting numerous claims for, *inter alia*, RICO violations, breach of contract, tort and fraud.[1] On November 15, 2006, plaintiff filed an amended complaint against defendant asserting only one claim pursuant to the "savings clause" of Rule 60(b) of the Federal Rules of Civil Procedure (Rule 60)[2] seeking relief from a final judgment entered June 17, 2002 in a prior action between the parties entitled <u>Manti's Transportation, Inc. v. Associates Commercial Corporation</u>, docket

---

[1] Plaintiff voluntarily dismissed the action as against all other named defendants except Citicapital Commercial Corporation by notice entered November 15, 2006.

[2] Although Rule 60 has been amended, effective December 1, 2007, this action was commenced prior to that amendment. In any event, the "savings clause" contained in former Rule 60(b) is virtually identical in all relevant respects to the "savings clause" set forth in the new Rule 60(d).

1

no. 00 Civ. 6807 (FB)(RML) ("Manti I"), on the ground of fraud on the court. Defendant now separately moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint and pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions. For the reasons stated herein, defendant's motion to dismiss is granted and its motion for sanctions is denied.

I. Background[3]

    A. The Parties

MTI is a New York corporation which, until June 1998, was engaged in the business of providing commuter bus service in and about the New York City area. (Amended Complaint [Compl.], ¶ 8). According to plaintiffs, MTI has the exclusive right, other than the New York City Transit Authority, to pick up and discharge passengers at New York City bus stops. (Id.).

Manti is the President and sole shareholder of MTI. (Compl., ¶ 9).

At all relevant times until November 2000, Associates Commercial Corporation (Associates) was a subsidiary of Associates First Capital Corp. (Compl., ¶ 14). On November 30, 2000, Associates was acquired by Citigroup, Inc. through merger into Citigroup's subsidiary Citicapital Commercial Corporation. (Id.). Citicapital is a Delaware corporation with its principal place of business in Irving, Texas. (Id.).

Associates provides commercial financing services to prospective purchasers of buses,

---

[3] As is required on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiffs. They do not constitute findings of fact by this court.

2

including MTI. (Compl., ¶ 14).

During November 1997, plaintiff purchased a fleet of buses from Metrotrans, a third-party vendor, which was financed by a loan from defendant evidenced by a security agreement dated March 31, 1998 (Security Agreement A). (Memorandum & Order of Judge Block dated March 8, 2002 [Manti I Order], p. 2). Following the purchase, plaintiff discovered that the buses were defective and unusable, but their repeated demanded to Metrotrans to repair the buses went unheeded. (Manti I Order, p. 2).

In June 1998, Manti contacted Lawrence Shute (Shute), the branch manager of defendant's Pennsylvania office, to notify him that due to the unusable buses, MTI had lost significant revenue and, thus, was unable to make timely payments on the various security agreements between the parties. (Manti I Order, p. 2). Plaintiffs contend that Shute instructed them to return the fleet of buses to Metrotrans and promised that defendant would thereafter "*immediately* provide [MTI] with the necessary financing to purchase a new fleet of buses," though this is disputed by defendant. (Manti I Order, p. 2) (emphasis added). Although plaintiff returned the fleet of buses to Metrotrans, no new financing was immediately forthcoming from defendant. (Manti I Order, p. 3).

It was not until November 18, 1999, approximately fifteen (15) months after plaintiffs returned the buses, that defendant agreed to provide MTI with a new loan and to refinance its existing debt. (Manti I Order, p. 3). By that time, MTI had ceased operating. (Id.). Manti and defendant thereafter executed a Modification Agreement governing the refinancing of plaintiff's existing debt and a security agreement governing the new loan, together with a "Mutual Release" (the release), all dated November 18, 1999. (Id.). The release provided that it was executed in

3

consideration for, *inter alia*, the November 18, 1999 security agreement and the performance of MTI of all of its obligations thereunder. Plaintiffs claim that although Manti signed the release, he did so not knowing that it was a release and on the mistaken belief that it had been approved by his attorney. (Compl., ¶ 38; Plaintiffs' Response to Defendant's Request for Admissions, Response No. 1).

Judge Block found that "[d]efendant provided the additional financing and modified the terms of [MTI's] previous loans in compliance with its obligations under the 'Modification Agreement' and [November 18, 1999 security agreement]. On August 21, 2000, the parties rolled [MTI's] debt over into two new security agreements [the August 21, 2000 Security Agreements]." (Manti I Order, p. 4). Manti concedes that the August 21, 2000 Security Agreements contain genuine signatures. (Compl., ¶ 42). Plaintiffs do not dispute that MTI failed to make any of the required payments on the August 21, 2000 Security Agreements. (Id.).

B.   Manti I

In October 2000, MTI commenced the Manti I action in the Supreme Court of the State of New York, Kings County, alleging four (4) causes of action for breach of contract, fraud, unjust enrichment and tortious interference with prospective business advantage. (Compl., ¶ 32; Manti I Order, pp. 1, 4). The complaint alleged, in essence, (1) that defendant had not delivered certain buses as ordered, as the buses could not pass New York State inspection for use during warm weather due to the absence of proper air conditioning, and that defendant failed to take any action to correct the problem; (2) that defendant had fraudulently induced Manti to surrender his entire fleet of buses in the summer of 1998 under false pretenses; (3) that defendant had accepted

4

payments from Manti without honoring its own obligations; and (4) that defendant had tortiously interfered with Manti's attempts to purchase new buses. (Compl., p. 32).

Thereafter, defendant filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446 removing Manti I to this Court based on diversity of jurisdiction. (Compl., ¶¶ 5, 33; Manti I Order., p. 4; Civil Docket for Case No. 1:00-cv-06807-FB-RML [Manti I Docket], Doc. No. 1). Manti I was assigned to District Court Judge Frederic Block. (Compl., ¶ 31; Manti I Docket). Defendant's answer asserted counterclaims for monetary damages for breach of the August 21, 2000 Security Agreements and for attorneys' fees and costs for breach of the release. (Answer [Ans.], ¶¶ 89-108, Doc. No. 4). In its reply to the counterclaims, MTI asserted, *inter alia*, affirmative defenses, including that signatures on certain of the documents were obtained by fraud, duress and/or mistake and for defendant's breach of contract. (Manti I Docket, doc. no. 6; Katz Aff., Ex. L).

Following removal, defendant moved in Manti I, *inter alia*, (1) for summary judgment (a) dismissing the complaint and (b) on its counterclaims, and (2) for sanctions; and MTI cross-moved pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure to withdraw its complaint without prejudice on the ground, *inter alia*, that MTI intended to file a bankruptcy petition. (Compl., ¶ 36; Manti I Order, pp. 1, 5). By letter to Judge Block dated June 21, 2001, MTI indicated that it believed there were "litigable issues" in the case, including, *inter alia*, claims of fraud, misrepresentation and overreaching in connection with the release. (Affidavit of Bennett R. Katz, Esq., dated February 12, 2007 [Katz Aff.], Ex. I; Manti I Docket, doc. No. 38).

By order dated March 8, 2002, Judge Block (1) granted the branch of defendant's motion for summary judgment dismissing the complaint in Manti I; (2) granted the branch of defendant's

5

motion for summary judgment on its counterclaims; (3) denied defendant's motion seeking sanctions; and (4) denied MTI's cross motion since, *inter alia*, it indicated that it would not be filing for bankruptcy. (Compl., ¶ 42; Manti I Order, pp. 5, 9). In granting summary judgment dismissing the complaint, Judge Block concluded that "[i]n light of Manti's admission that he signed the release, the clear and unambiguous language of the release, and [MTI's] failure to put forth cognizable facts to make out a fraud, duress or misrepresentation defense, * * * the release is effective and bars all of [MTI's] claims." (Manti I Order, p. 7). In granting defendant summary judgment on its counterclaims for breach of the August 21, 2000 Security Agreements, Judge Block concluded, *inter alia*, that "[i]n none of its papers submitted in opposition to the motion for summary judgment does [MTI] contend that it is not in default or challenge the amount defendant alleges is due under [the August 21, 2000] security agreements. Accordingly, defendant is entitled to summary judgment for the full amount of its breach of contract claims, plus interest at the rate of nine percent [9 %] per annum from the dates of default." (Id.). In granting summary judgment on defendant's counterclaim for breach of the release, Judge Block concluded that "[h]aving unambiguously released defendant from any and all claims, the Court concludes that plaintiff breached the implied covenant [in the release] not to sue by bringing this action." (Id. at 8).

By stipulation dated May 31, 2002, MTI stipulated, *inter alia*, to the date of default of the August 21, 2000 Security Agreements, the amount of damages it would pay to defendant for breach of those agreements and the amount of attorneys' fees and costs it would pay to defendant for breach of the release. (Manti I Docket, doc. No. 66; Katz Aff., Ex. J). Final judgment was entered in Manti I against MTI pursuant to the order and stipulation on June 17, 2002. (Compl.,

6

¶ 43; Manti I Docket, doc. No. 67). It is undisputed that the final judgment remains unsatisfied and that plaintiffs did not appeal the judgment, move for reconsideration of the order or judgment, or move to vacate the judgment within one (1) year of the date of its entry pursuant to subsections one (1) through three (3) of Rule 60(b).

C.   Procedural History of the Instant Action

On April 12, 2006, almost four (4) years after the date final judgment was entered in Manti I, plaintiffs commenced this plenary action ("Manti II") pursuant to, *inter alia*, the "savings clause" of Rule 60(b) of the Federal Rules of Civil Procedure seeking to vacate the Manti I order and judgment on the grounds that defendant perpetrated a fraud upon the Court in, *inter alia*, failing to disclose to Judge Block the actions it took during the course of the proceedings in Manti I in obtaining title to and disposing of the buses it repossessed from plaintiffs.[4] Specifically, plaintiffs contend, in effect, that defendant's representations in Manti I that MTI had title to the buses in issue and that defendant had liens on the title to those vehicles were material misrepresentations and that since MTI never had title to the vehicles as a result of defendant's conduct and defendant never had recorded liens on those vehicles, defendant breached the August 21, 2000 security agreements and, thus, was not entitled to judgment on its counterclaims. (Compl., ¶¶ 45, 48; Affirmation of Paul Hollender in Opposition to Motion to Dismiss [Hollender Aff.], ¶¶ 85-89, 95). Although this action was originally assigned to Judge

---

[4] Although plaintiff commenced this action against other defendants and alleged numerous claims sounding in RICO, fraud, contract and tort, plaintiff subsequently voluntarily dismissed all of the other named defendants except for Citicapital, (see Manti II Docket, doc. nos. 36, 42), and filed an amended complaint alleging only one cause of action pursuant to the "savings clause" of Rule 60(b).

7

Block, it was subsequently re-assigned to Judge Charles P. Sifton on May 19, 2006, then to myself on June 14, 2006.

Defendant now (1) moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of the amended complaint, and (2) separately moves pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions against plaintiffs.

II. Discussion

A. Standard of Review

In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the previous standard that a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." The Court replaced the "no set of facts" language with the requirement that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Id. at 1974. The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324

8

(E.D.N.Y. 2007).

Bell Atlantic did not, however, change the requirement that the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).

B.  Rule 60(b)

As it existed on the date this action was commenced, Rule 60(b) of the Federal Rules of Civil Procedure permitted a court to relieve a party from a final judgment, order, or proceeding upon the following grounds:

> "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud * * *, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

Rule 60(b) imposed a one (1) year limitation period from the date of entry of judgment to move for relief under subsections (1) through (3).[5] As plaintiffs filed this action almost four (4) years after the date that judgment was entered in Manti I, legal relief under Rule 60(b) by way of motion in that case is time barred.

In addition, the "savings clause" of Rule 60(b) provided, in pertinent part, as follows:

---

[5] Rule 60(c) of the new Rule 60, as amended effective December 1, 2007, imposes the same one (1) year limitation.

9

> "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * *, or to set aside a judgment for fraud upon the court."

The one (1) year limitations period does not apply to independent actions seeking to vacate a final order or judgment under the savings clause of Rule 60. See, e.g., King v. First American Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002)(holding that the plaintiff's motion to vacate for fraud committed upon the court was not subject to the one year limitation period); Wolfson v. Wolfson, No. 03 Civ. 0954, 2004 WL 224508, at * 5 (S.D.N.Y. Feb. 5, 2004) (holding that unlike post-judgment motions for 60(b) legal relief, which must be brought within one year after judgment is entered, an independent action in equity may be brought at any time).

"The court exercises discretion in determining whether to entertain independent actions for relief and looks to traditional equitable principles to guide its decision." Campaniello Imports, Ltd. v. Saporiti Italida, S.p.A., 117 F.3d 655, 661 (2d Cir. 1997). Generally, in order to establish a right to equitable relief, a plaintiff "must (1) show that [he or she] [has] no other available or adequate remedy; (2) demonstrate that [his or her] own fault, neglect, or carelessness did not create the situation for which [he or she] seek[s] equitable relief; and (3) establish a recognized ground-such as fraud, accident, or mistake-for the equitable relief." Campaniello, 117 F.3d at 662. Moreover, "since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'" Paddington Partners v. Bouchard, 34 F.3d 1132, 1142 (citing Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)); see also United States v. International Brotherhood of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) (holding that the movant bears the burden of proof on a motion pursuant to Rule 60(b)

and that burden is onerous). "A party seeking to vacate a judgment in an independent action * * * must show that permitting the judgment to stand would be a 'grave miscarriage of justice.'" Opals on Ice Lingerie v. Bodylines, Inc., 425 F.Supp.2d 286, 289 (E.D.N.Y. 2004); see also United States v. Beggerly, 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (holding that independent actions must be reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata" and are available "only to prevent a grave miscarriage of justice." (internal quotations and citations omitted)). "The requirement that the underlying judgment be 'manifestly unconscionable' 'reserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'" Opals, 425 F.Supp.2d at 290 (citing Paddington, 34 F.3d at 1144).

Plaintiffs have failed to meet their onerous burden of showing, *inter alia*, that their own carelessness did not create the situation for which they now seek equitable relief. As evidenced by the numerous assertions in MTI's papers submitted in the Manti I case, plaintiffs were aware of the possibility of fraud committed by defendant prior to the entry of final judgment in that case.[6] For example, plaintiffs admittedly knew during the course of the proceedings in Manti I that they did not have certificates of title for the buses purchased at issue, insofar as (1) plaintiffs

---

[6] In fact, plaintiff's counsel stated that "[a]t a pretrial conference [in Manti I], Judge Block advised Manti that if he believed he was the victim of fraud, he should pursue criminal channels." (Hollender Aff., ¶ 69). Plaintiffs admit that thereafter, they "pursued various channels regarding possible criminal prosecution" and that although "various agencies declined active involvements, [they] provided Manti with guidance and inspiration to investigate * * *." (Hollender Aff., ¶ 70). According to plaintiffs, the present action "incorporat[es] the results of that new information * * *." (Hollender Aff., ¶ 71; see also ¶ 73 (stating that Manti II "flow[s] directly from Judge Block's suggestion to Manti that he * * * continue to pursue criminal avenues of relief" regarding his claims of pre-Release fraud)).

11

allege that "[b]etween November 1999 and August 2000, Manti made innumerable telephone calls and personal visits to [defendant] * * * seeking to obtain possession of the certificates of title so that he could register the vehicles, (Compl., ¶ 61; see also Compl., ¶ 109); (2) Manti states, *inter alia*, that "[t]hroughout the course of [his] dealing with [defendant] after November 18, 1999, [he] had two basic questions which nobody was able to answer: (i) How could [defendant] be suing [him] if [he] never received [his] titles to the buses? [and] (ii) What happened to the buses?", (Manti Supp. Aff., ¶ 12); (3) plaintiffs' counsel states that "[c]ommencing a reasonable period of time after the first bus purchase on November 19, 1999, and continuing through July 2000, Manti constantly inquired of Shute, to no avail, as to why he had not yet received certificates of title," (Affirmation of Paul Hollender dated February 12, 2007 [Hollender Aff.], ¶61); and (4) plaintiff's counsel states that "[f]inally, in July 2000, having still not received a single certificate of title for the 14 buses he had purchased since November 18, 1999, Manti * * * [contacted] the most senior person in [defendant's] organization, and explained his inability to receive certificates of title * * * [yet] Manti still did not receive any certificates of title after the August 2000 final refinances," (Hollender Aff., ¶ 66) (emphasis omitted). Moreover, plaintiffs admit to being unable to operate the buses from the date they were purchased because he could not get them registered or obtain license plates for them without the certifications of title. (Hollender Aff., ¶ 62).

Further, much of plaintiffs' purportedly "new" evidence is based on public information that could have been discovered earlier with due diligence. By way of example, Manti states that he discovered that no certificates of title had ever been issued for the buses at issue following an internet search; that he ascertained certain information regarding the titles on "Carfax," an

12

internet search site that, according to its website, was publicly available during the course of Manti I; and that he was eventually able to order title histories from the relevant state motor vehicle departments. (Supplemental Affidavit of Manti dated November 15, 2006 [Manti Supp. Aff.], ¶¶ 3, 5, 12). Thus, the evidence upon which plaintiffs rely to purportedly establish their claim that defendant concealed the titles from the court in Manti I is not "new" for purposes of Rule 60(b). See, e.g. Bourne Co. v. Walt Disney Co., No. 91 Civ. 0344, 1994 WL 263482, at * 1 (S.D.N.Y. June 10, 1994), aff'd, 68 F.3d 621 (2d Cir. 1995) (holding that evidence contained in public records cannot be considered newly discovered); Hemric v. City of New York, No. 99 Civ. 213, 2002 WL 1203850, at * 2 (S.D.N.Y. June 3, 2002) (accord); Ramos, ex rel. Arias v. Matke Realty, Ltd., 98 Civ. 3582, 1999 WL 61437, at * 3 (S.D.N.Y. Feb. 4, 1999) (holding that public documents cannot be considered new evidence for purposes of Rule 60(b)). Plaintiffs' ignorance of the availability of the public resources and concomitant failure to conduct a proper investigation does not warrant equitable relief. Moreover, plaintiffs do not adequately explain why they delayed requesting information regarding the titles of the buses under the Freedom of Information Action (FOIA) until October 2005. (See, Compl., ¶¶ 63, 68).

In sum, the record establishes that plaintiffs should have investigated their claims for fraud, which they admittedly suspected during the course of Manti I, which would have permitted a timely motion to vacate the final judgment in Manti I pursuant to Rule 60(b)(3) within one (1) year from the date the judgment was entered. "[I]t is fundamental that equity will not grant relief if the complaining party has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action * * * to open, vacate, modify, or otherwise obtain relief against, the judgment." Campaniello, 117 F.3d at 662 (citing Cresswell v.

Sullivan & Cromwell, 922 F.2d 60, 71 (2d Cir. 1990) (internal quotations and citations omitted)). Since plaintiffs failed to take advantage of the adequate remedy at law offered by Rule 60(b)(3), they are precluded from seeking equitable relief. See, e.g. Wolfson, 2004 WL 224508, at * 5 (finding that plaintiff could not seek equitable relief where he had first come to believe that the defendant's conduct constituted fraud prior to the expiration of the one (1) year limitation period to submit a Rule 60(b)(3) motion).

Moreover, "[t]he type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion." Campaniello, 117 F.3d at 663 (citing Gleason v. Jandrucko, 860 F.2d 556, 558 (2d Cir. 1988)). "'[F]raud upon the court' * * * is limited to fraud which seriously affects the integrity of the normal process of adjudication * * * [and] should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." King, 287 F.3d at 95 (internal quotations and citations omitted). "Fraud on the court involves more than harm to a single litigant 'because it threatens the very integrity of the judiciary and the proper administration of justice.'" Trowbridge v. Institute for Basic Research in Developmental Disabilities, No. 98 CV 3529, 2003 WL 21143086, at * 2 (E.D.N.Y. Mar. 3, 2003), aff'd, 88 Fed.Appx. 454 (2d Cir. Feb. 23, 2004) (citing Gleason, 860 F.2d at 559); see also Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 460 (2d Cir. 1994) (holding that fraud on the court involves far more than an injury to an individual litigant, but rather is fraud which seriously affects the integrity of the normal process of adjudication). "[W]hen a movant seeks to set aside a judgment on the basis of fraud on the court, he 'must show that the conduct complained of

prevented [him] from fully and fairly presenting his case.'" State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004) (citing Davenport Recycling Associates v. C.I.R., 220 F.3d 1255, 1262 (11th Cir.2000)). "Fraud upon the court must be established by clear and convincing evidence." King, 287 F.3d at 95.

Plaintiffs have not met their burden of establishing that defendant's alleged conduct in Manti I prevented them from fairly presenting their defense of the counterclaims.[7] Plaintiffs cannot establish that defendant's conduct constituted fraud on the court, since plaintiffs not only failed to oppose the branch of defendant's motion seeking summary judgment on the counterclaims[8], but also stipulated to the amount of money damages awarded on those claims. Nor do plaintiffs explain why they did not seek discovery for the approximate six (6) month period between the filing of Manti I and defendant's motion for summary judgment to oppose the counterclaims, or even oppose the branch of defendant's motion for judgment on the counterclaims as premature. Moreover, at the most, plaintiffs allege fraud committed by defendant on them, not on the court, which can only be brought pursuant to Rule 60(b)(3) and which is, thus, time-barred.

Furthermore, "allegations of nondisclosure during pretrial discovery do not constitute

---

[7] In their memorandum of law in opposition to defendant's motion to dismiss, plaintiffs indicate that the amended complaint requests "very limited relief: To vacate that portion of Judge Block's Order of March 8, 2002 as granted summary judgment to [defendant] on its counterclaims, and that portion of the Judgment entered thereupon which awarded a money judgment against MTI." (Memorandum of Law on Behalf of Plaintiffs in Opposition to Motion by Defendant to Dsimiss [Plf. Mem.], p. 13).

[8] In its opposition to defendant's motion for summary judgment in Manti I, MTI merely stated that "[t]he counterclaims will be stayed in this forum pursuant to the provisions of the Bankruptcy Code, and will presumably be addressed in that forum." However, at no time during the pendency of Manti I had MTI filed a petition in the Bankruptcy Court.

15

grounds for an independent action under Fed.R.Civ.P. 60(b)." Gleason, 860 F.2d at 559-560. Thus, plaintiffs' allegations that defendant failed to disclose its purported conduct committed after commencement of Manti I, i.e., (1) that it filed lien applications and applications for post-repossession titles in other states, (2) that it held the titles to the buses, and (3) that it disposed of the repossessed buses, are insufficient to justify relief under the "savings clause" of Rule 60(b).

In addition, fraud which involves "witness perjury or fabricated evidence that does not involve officers of the court and that could and should have been discovered" during the previous litigation is insufficient to establish fraud on the court. Barrett v. United States, No. 06-CV-1324, 2006 WL 3248396, at * 7 (N.D.N.Y. Nov. 7, 2006); see also Gleason, 860 F.2d at 559 (holding that the credibility and veracity of a witness at issue in an original proceeding cannot be later challenged by way of an independent action and that evidence of alleged perjury by a witness is simply not sufficient for a finding of "fraud upon the court"); Trowbridge, 2003 WL 21143086, at * 4 (holding that fraud upon the court is not shown by presenting evidence attacking the veracity of a witness in the original proceeding). Thus, plaintiffs' allegation that Shute, who is not an officer of the court, committed perjury in Manti I by filing affidavits in support of defendant's motion for summary judgment that contained false or misleading information is insufficient to justify relief under the "savings clause" of Rule 60. Plaintiffs fail to proffer any evidence that Shute colluded with defendant's counsel in a scheme to defraud the court.

In sum, "neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant," Gleason, 860 F.2d at 560, and thus, is insufficient to justify relief under the savings clause of Rule 60. See, e.g. Tesser v. Board of Educ. of City of New

York, No. 97-CV-6719, 2005 WL 2977766, at * 5 (E.D.N.Y. Nov. 7, 2005) (holding that allegations of witness perjury and nondisclosure during pretrial discovery does not constitute grounds for an independent action under Rule 60).

Moreover, plaintiffs allegations that defense counsel made misleading statements in his pleadings and motions are insufficient to state a claim for fraud on the court. See, e.g. King, 287 F.3d at 95-96 (holding that the plaintiff's allegations, *inter alia,* that defense counsel falsely represented to the court that the plaintiff's defamation claim were time-barred, that the plaintiff failed to present any evidence in support of his due process claim, that the jury was improperly charged, that the wrong party prevented the plaintiff from recovering his gun, and that the verdict was intended to compensate the plaintiff for lost back pay and emotional distress were no more than complaints that the defendants disputed the plaintiff's version of law and facts, which is exactly what is expected in the normal adversary process); Babigian v. Association of Bar of City of New York, 144 F.R.D. 30, 32 (S.D.N.Y. 1992) (finding that the plaintiff's contention that the defendants engaged in fraud because their motion papers for dismissal of the complaints raised meritless arguments and misrepresented the plaintiff's arguments is insufficient to establish entitlement to relief under Rule 60 because a mere disagreement with an adversary's legal arguments is insufficient to justify an inference of fraud). Since plaintiffs fail to sustain their onerous burden of establishing that it would be unconscionable, or a miscarriage of justice, to let the final judgment in Manti I stand, defendant's motion to dismiss is granted.[9]

---

[9] In light of this determination, it is unnecessary to consider defendant's remaining contentions, except with respect to defendant's claim for attorney's fees, which will be considered in connection with its motion for sanctions.

C.   Sanctions[10]

Rule 11(b) of the Federal Rules of Civil Procedure provides as follows:

"By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Rule 11(c)(1) of the Federal Rules of Civil Procedure provides as follows:

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

"That Rule permits the imposition of sanctions when an attorney signs a pleading that is interposed for an improper purpose without reasonable inquiry or without grounds justifying the argument advanced." Fox v. Boucher, 794 F.2d 34, 37-38 (2d Cir. 1986).

Rule 11(c)(4) of the Federal Rules of Civil Procedure provides as follows:

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all

---

[10] Defendant has met the technical requirements for making a motion for sanctions, insofar as it made the motion separately from its motion to dismiss and it complied with the "safe harbor" provision of Rule 11 requiring it to serve the motion twenty-one (21) days prior to filing it in order to give plaintiff an opportunity to voluntarily withdraw the amended complaint.

18

of the reasonable attorney's fees and other expenses directly resulting from the violation."

Although plaintiff voluntarily withdraw the original complaint filed in this action as asserted against all of the named defendants except Citicapital and withdraw all but one of his claims against defendant only after it moved for dismissal, and although plaintiff's amended complaint is ultimately dismissed, it cannot be said that the amended complaint was entirely frivolous or made for a completely improper purpose. Indeed, plaintiff's counsel spent almost one hundred fifty (150) pages arguing why the judgment in Manti I should be vacated and marshaled numerous documents in an attempt to bolster plaintiffs' claims of fraud. Thus, in the exercise of my discretion, I decline to impose monetary sanctions on plaintiff's counsel, Paul Hollender, or the law firm with which he is affiliated. However, plaintiffs and their counsel are advised that any further attempts to litigate in this Court the matters of which they complain in this action, and of which they complained in Manti I, may result in the imposition of sanctions, including monetary sanctions and an injunction against filing future lawsuits relating to the same transactions and occurrences.

III.   Conclusion

For the reasons stated herein, defendant's motion to dismiss is granted and the amended

19

complaint is dismissed in its entirety. Defendant's motion for sanctions is denied. The clerk of the Court is directed to close this case.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 9, 2008
       Central Islip, N.Y.

Copies to:

Corash & Hollender PC
1200 South Avenue, Suite 201
The Corporate Park of Staten Island
Staten Island, New York 10314

Katz & Rychik, P.C.
116 John Street, 7th Floor
New York, New York 10038